# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**Ryan Nenigar,**
**Petitioner Below, Petitioner**

**FILED**

November 22, 2013
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)    No. 13-0385** (Hampshire County 06-C-07)

**David Ballard, Warden,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Ryan Nenigar, by counsel Jonathan G. Brill, appeals the February 6, 2013, order of the Circuit Court of Hampshire County denying his petition for writ of habeas corpus. Respondent State of West Virginia, by counsel Scott E. Johnson, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was found guilty of first-degree murder by a jury on August 4, 2004. In the underlying crime, petitioner, Stephen Cooper and Scott Cooper were found to have picked up the victim in petitioner's vehicle. The Coopers testified against petitioner, alleging that he was the mastermind in the crime and choked the victim to death. They also alleged that he had the idea to sink the victim's body in a lake with concrete blocks, but when they tried to do so, they failed and dumped the blocks into the lake. They then took her body to a creek in Virginia and dumped it there. Stephen Cooper testified that when the body was dumped in the creek, he thought he heard the crack of the victim's head hitting a rock.

Petitioner appealed his conviction, but his appeal was denied in September of 2005. Petitioner then moved for a new trial, which was denied, and his appeal of the order denying the motion for a new trial was likewise denied. Petitioner filed a petition for writ of habeas corpus and counsel was appointed. Counsel filed an amended petition for writ of habeas corpus, which the circuit court denied on February 6, 2013, after finding that a hearing was not necessary. Petitioner appeals from this denial.

1

This Court reviews appeals of circuit court orders denying habeas corpus relief under the following standard:

> "In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syllabus point 1, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

Syl. Pt. 1, *State ex rel. Franklin v. McBride*, 226 W.Va. 375, 701 S.E.2d 97 (2009). The following standard is applied to claims concerning ineffective assistance of counsel:

> In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

Syl. Pt. 5, State v. Miller, 194 W.Va. 3, 459 S.E.2d 114 (1995).

On appeal, petitioner sets forth five assignments of error. First, petitioner argues that the lower court erred in finding that he received effective assistance of counsel at trial, as trial counsel acted in a deficient manner, preventing petitioner from receiving a fair trial Next, petitioner argues that the lower court erred in finding that the trial court properly admitted evidence of prior bad acts under Rule 404(b) of the West Virginia Rules of Evidence. Petitioner also argues that the lower court erred in finding that the State presented sufficient evidence at trial to sustain convictions of first-degree murder and conspiracy. Further, petitioner argues that the lower court erred in finding that the State did not breach its duty in failing to preserve material evidence prior to trial and that the prosecuting attorney abandoned his quasi-judicial role, which prevented petitioner from receiving a fair trial. Finally, petitioner argues that the lower court erred in failing to declare a mistrial or poll the jury during the voir dire process based upon prejudicial statements made by a juror in the presence of other jury members.

Upon our review of the record and the briefs on appeal, we find no error or abuse of discretion by the circuit court. All of the issues petitioner raises on appeal were issues addressed and discussed by the circuit court in its order denying petitioner post-conviction habeas corpus relief. The circuit court properly found that counsel was effective in his representation of petitioner, and that the prior bad acts, specifically the abandonment of petitioner's vehicle and a prior incident wherein he choked his girlfriend, were properly admitted under Rule 404(b). Further, the evidence was sufficient to sustain the conviction for first-degree murder and conspiracy.

Petitioner contends that the State failed to preserve material evidence by not procuring and producing the cinder blocks at trial. As to this claim, the circuit court properly concluded that there was no evidence that the State was negligent in extracting the cinder blocks from the lake or that the State failed to properly preserve the evidence. The circuit court also found no prosecutorial misconduct when the prosecutor referred to defense counsel as a "jack in the box" based on repeated objections, noting that the comment petitioner relies upon was made outside of the presence of the jury. Finally, the circuit court found that voir dire was proper and that the statement that one juror knew petitioner "from a previous placement" did not prejudice him, as none of the jurors became biased against petitioner based on this isolated comment. Having reviewed the circuit court's "Order Denying Petitioner's Petition for Writ of Habeas Corpus," entered on February 6, 2013, we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignments of error raised in this appeal. The Clerk is directed to attach a copy of the circuit court's opinion letter and order to this memorandum decision

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** November 22, 2013

**CONCURRED IN BY:**

Chief Justice Brent D. Benjamin
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

## IN THE CIRCUIT COURT OF HAMPSHIRE COUNTY, WEST VIRGINIA

RYAN NENIGAR

      **Petitioner,**

v.
                               **Civil Action No. 06-C-07**
                               **Honorable Thomas H. Keadle**

DAVID BALLARD, Warden
Mt. Olive Correctional Center,

      **Respondent.**

## ORDER DENYING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

This matter came before the Court upon Petitioner's *Petition for Writ of Habeas Corpus* filed January 18, 2006; upon an Order Granting Leave to Proceed in Forma Pauperis, Appointing Counsel to File Amended Petition, and Directing Respondent to File an Answer entered February 6, 2006, appointing attorney Amanda H. See to represent Petitioner; upon Agreed Orders entered March 10, 2006, and June 1, 2006, granting Petitioner and Respondent additional time to file an Amended Petition and Answer, respectively; upon an Order granting Petitioner's Motion to Voluntarily Dismiss the Omnibus Habeas Corpus Proceeding without Prejudice entered August 3, 2006; upon an Order Vacating Dismissal Order entered September 5, 2006; upon an Order setting a status conference entered May 15, 2008; upon an Order entered May 29, 2008, granting a motion to continue the evidentiary hearing on the Motion for New Trial; upon an Order entered September 18, 2008, continuing the matter generally while the Court considered briefs with regard to the Motion for New Trial; upon an Order setting a status conference entered January 20, 2009; upon an Order entered February 11, 2009, appointing attorney Chad B. Cissel to represent Petitioner for purposes of filing an Amended Petition; upon a Motion for Appointment of New Habeas Counsel filed by Petitioner, *pro se*, on July 1, 2010; upon an Order setting a

A TRUE COPY
ATTEST:

*Sonja K Embree*

Clerk of the Circuit/Family Courts
of Hampshire County, West Virginia

hearing on Petitioner's Motion entered July 26, 2010; upon an Order entered August 30, 2010, continuing the hearing; upon an Order entered September 17, 2010, denying Petitioner's Motion for New Counsel; upon a Motion for Appointment of New Habeas Counsel filed by Petitioner, *pro se*, on February 8, 2011; upon an Order Setting Hearing entered on February 28, 2011; upon an Order entered April 11, 2011, continuing the hearing; upon an Order Appointing New Counsel entered April 25, 2011, appointing attorney Tim Sirk to represent Petitioner; upon an Order entered November 10, 2011, granting Petitioner additional time to file an Amended Petition; upon an Order entered February 1, 2012, granting Petitioner additional time to file an Amended Petition; upon an Amended Petition filed March 12, 2012; upon an Order Directing Respondent to File Answer entered April 13, 2012; upon Agreed Orders entered May 11, 2012, and June 19, 2012, granting Respondent additional time to file a Response; and upon a Response to Habeas Corpus Petition filed on June 21, 2012.

The Court has carefully considered the Petition, Amended Petition, Response, the entire record in this case and the underlying criminal proceeding, and pertinent legal authority. In support of its decision, the Court makes the following findings of fact and conclusions of law:

## THE CRIME

The victim, Christa Marie Kidwell, had been missing since on or about June 29, 2003. On May 15, 2004, skeletal remains and human tissue were found in a culvert of a small creek off of Back Creek Road in the Gore area of Virginia. The DNA results showed that the remains were those of Ms. Kidwell.

## PROCEDURAL HISTORY

1. Petitioner was indicted on May 4, 2004, and charged with (Count One) Murder in violation of West Virginia Code § 61-2-1; and (Count Two) Conspiracy in violation of West

Virginia Code § 61-10-31. Petitioner's initial defense counsel was Daniel R. James. The trial court granted Mr. James' Motion to Withdraw and appointed John H. Treadway, Jr. to represent Petitioner. (Ord. May 5, 2004; Ord. May 25, 2004.) The trial court also appointed J. David Judy, III, as co-counsel for Petitioner. (Ord. June 7, 2004.)

2. On May 28, 2004, and June 11, 2004, the trial court conducted a suppression hearing. (Ord. June 16, 2004.)

3. On June 24, 2004, the trial court conducted a hearing with regard to the State's 404(b) Motion. With regard to items "d" and "e" in the State's Motion, the trial court denied the State's request. (Ord. July 9, 2004.) The trial court requested briefs with regard to items "a, b, & c." (Id.) On July 7, 2004, the Petitioner filed a brief with regard to 404(b) evidence. On July 8, 2004, the State filed a memorandum with regard to 404(b) evidence. On July 9, 2004, the Petitioner filed an Objection to the State's memorandum. Also on July 9, 2004, the trial court conducted a further hearing with regard to the State's Motion. The trial court denied the State's Motion with regard to paragraphs "a," "b," and "c" except that portion of paragraph "c" which related to testimony to be offered by Cleona Grace and Donald Wood about the ownership and operation of a small white Geo Metro. (Ord. July 28, 2004.)

4. On July 29, 2004, the State filed a Notice of State's Intent to Use Evidence Pursuant to 404(b) of the West Virginia Rules of Evidence.

5. On August 2, 3, 4, and 5, 2004, the trial court conducted a jury trial. (Ords. Aug. 13 and 18, 2004.) The jury found Petitioner guilty of Murder in the First Degree and guilty of Conspiracy to Commit the offense of First Degree Murder. (Verdict Form, Aug. 5, 2004.)

6. On August 17, 2004, the probation officer filed a pre-sentence investigation report. On that same date, Petitioner filed a Motion for Judgment of Acquittal and Alternative Motion for New Trial.

7. On August 18, 2004, the trial court conducted a hearing on the Motions and denied both. (Ord. Aug. 30, 2004.) Also on that same date, Petitioner was sentenced as follows: To serve the balance of his natural life in the penitentiary of this State, without possibility of parole, for Count One and an indeterminate term of not less than one nor more than five years in the penitentiary for Count Two. (Ord. Aug. 30, 2004.) The trial court did not impose a fine and ordered that the sentence for the conspiracy conviction shall run concurrently with the sentence for the murder conviction. (*Id.*) The State was awarded judgment against Petitioner for the costs of the action and the Petitioner was ordered to pay restitution to the victim's family for the victim's funeral expenses. (*Id.*) The effective date of the sentence was August 18, 2004, and Petitioner was given credit for 189 days of confinement. (*Id.*) Also, the sentences were ordered to run consecutive with the sentence imposed in Hampshire County Criminal Action No. 04-F-14. (*Id.*)

8. On September 16, 2004, Petitioner filed a Notice of Intent to Appeal. Also on that date, the trial court conducted a hearing with regard to counsel's request for additional time to prepare an appeal, due to the voluminous size of the transcripts. The trial court granted a two month extension of time. (Ord. Sept. 20, 2004.)

9. On January 13, 2005, Petitioner filed a Motion for Additional Time Extension to File Petition for Appeal with the Supreme Court of Appeals of West Virginia ("Supreme Court"). On January 20, 2005, the Supreme Court granted the Motion. (Jan. 26, 2005.)

10. On September 21, 2005, the Supreme Court refused the petition for appeal. (Sept. 26, 2005.)

11. On July 31, 2006, Petitioner, by counsel Amanda H. See, filed a Motion to Voluntarily Dismiss the Omnibus Habeas Corpus Proceeding without Prejudice and Motion for New Trial. The Motion for New Trial asserted that on May 31, 2006, "counsel for the Petitioner received by mail a letter purportedly written by Scott Cooper, a co-conspirator in the case, which appears to exonerate the Defendant from any meaningful role in the murder of the victim Ms. Kidwell."

12. On November 3, 2006, December 6, 2006, January 22, 2007, October 3, 2007, October 22, 2007, December 14, 2007, February 4, 2008, March 6, 2008, and June 17, 2008, the trial court conducted hearings and granted Petitioner's Motions to Continue.

13. On December 17, 2008, the trial court entered an Order denying the Motion for New Trial.

14. On December 30, 2008, Petitioner filed a Notice of Intent to Appeal the Order denying his Motion for New Trial. On January 1, 2009, Ms. See took office as Family Court Judge and was, therefore, ineligible to represent Petitioner. The trial court appointed attorney Jessica M. Baker to represent Petitioner for purposes of his appeal. (Ord. Feb. 5, 2009; Ord. Feb. 11, 2009.)

15. On October 6, 2009, the Supreme Court refused the petition for appeal. (Oct. 9, 2009.)

## STANDARD OF REVIEW

16. Claims that have been "previously and finally adjudicated," either on direct appeal or in a previous post-conviction habeas proceeding, may not form the basis for habeas

relief. W.Va. Code § 53-4A-1(b); *Bowman v. Leverette*, 169 W.Va. 589, 289 S.E.2d 435 (1982). Any grounds for habeas relief that could have been advanced on direct appeal or in a previous post-conviction proceeding but were not have been waived. W.Va. Code § 53-4A-1(c). The petitioner bears the burden of demonstrating that such waiver was less than knowing and intelligent. *Ford v. Coiner*, 156 W.Va. 362, 196 S.E.2d 91 (1972).

17. Whether denying or granting a petition for writ of habeas corpus, a circuit court must make adequate findings of fact and conclusions of law relating to each contention advanced by the petitioner, and to state the grounds upon which the matter was determined. Findings of fact made by a trial court in a post-conviction habeas corpus proceeding will not be set aside or reversed on appeal unless such findings are clearly wrong. *Coleman v. Painter*, 215 W.Va. 592, 600 S.E.2d 304 (2004).

18. West Virginia Code section 53-4A-7(c) provides:

When the court [in a post-conviction habeas corpus proceeding] determines to deny or grant relief ... the court shall enter an appropriate order.... In any order entered in accordance with the provisions of this section, the court shall make specific findings of fact and conclusions of law relating to each contention or contentions and grounds (in fact or law) advanced, shall clearly state the grounds upon which the matter was determined, and shall state whether a federal and/or state right was presented and decided.

## CONCLUSIONS OF LAW

The Court will address separately the grounds alleged in the Amended Petition:

### Ineffective Assistance of Counsel

19. The Sixth Amendment to the United States Constitution and Article III, § 14 of the West Virginia Constitution not only assure the "assistance of counsel" to a defendant in a criminal proceeding but also assure that such a defendant receive competent and effective assistance of counsel. *State ex rel. Strogen v. Trent*, 196 W.Va. 148, 152, 469 S.E.2d 7,

11 (1996); *see also Cole v. White*, 180 W.Va. 393, 395, 376 S.E.2d 599, 601 (1988). "In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Syl. pt. 5, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

20. The West Virginia Supreme Court has held:

> In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of defense counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.

*Id.* at syl. pt. 6. The burden of proof is on the defendant. *Id.* A court is not required to address both prongs of the *Strickland/Miller* test if it can dispose of ineffective assistance of counsel claims on the failure to meet either prong of the test. *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995).

21. Furthermore, "Where a counsel's performance, attacked as ineffective, arises from occurrences involving strategy, tactics and arguable courses of action, his conduct will be deemed effectively assistive of his client's interests, unless no reasonably qualified defense attorney would have so acted in the defense of an accused." *State ex rel. Kitchen v. Painter*, 226 W.Va. 278, 290, 700 S.E.2d 489, 501 (2010) (citing syl. pt. 21, *State v. Thomas*, 157 W.Va. 640, 203 S.E.2d 445 (1974)).

22. Here, Petitioner asserts that defense counsel failed to call expert witnesses. Petitioner argues that defense counsel did not call an expert witness concerning the victim's

autopsy and cause of death. The Court finds that Dr. Frances Field, the State's medical expert, and a pathologist with the Virginia State Medical Examiner's Office, testified that the cause of death of the victim was from head trauma. (Tr. 16:25, Aug. 4, 2004.) The Court further finds that Dr. Field's opinion about the cause of death did contradict the trial testimony of twin brothers, Stephen and Scott Cooper, that the Petitioner strangled the victim. The Court finds that one of Petitioner's defense theories was that the victim died from a skull fracture inflicted by one of the Cooper brothers and that Dr. Field's testimony was not contrary to this theory. The Court further finds that defense counsel moved the admission into evidence of Dr. Field's autopsy report and a report by Dr. Ubelacker, which confirmed the findings of Dr. Field. (Tr. 28:17-30:18.) With regard to the alleged failure to call expert witnesses, the Court concludes that defense counsel's decision was not deficient under an objective standard of reasonableness.

23.     Also, Petitioner argues that defense counsel should have called an expert witness to forensically examine the cinder blocks that were allegedly used during the murder. The Court finds that Petitioner does not offer any scientific basis for how the cinder blocks could be forensically examined to determine how long they were in the lake.

24.     Petitioner further asserts that defense counsel stipulated to gruesome photographs. "The general rule is that pictures or photographs that are relevant to any issue in a case are admissible." *Roberts v. Stevens Clinic Hosp., Inc.*, 176 W.Va. 492, 497, 345 S.E.2d 791, 796 (1986). The Court finds that the photographs were offered by the State as evidence against the Petitioner, by showing that the remains were recovered downstream from where the Coopers testified the body was disposed of, showing the deterioration of the body by time and the elements, and showing the rope around the victim's neck. The Court further finds that the photographs also support one of Petitioner's defense theories that the Cooper brothers committed

the murder, by showing the multiple skull fractures that Dr. Field testified was the cause of death. The Court finds that the photographs had a lot of probative value, for the State and the Petitioner. Therefore, the Court concludes that defense counsel's decision was not deficient under an objective standard of reasonableness.

25. Petitioner further asserts that defense counsel failed to call Petitioner's mother as an alibi witness. In Syllabus Point 2 of *State v. Glover, supra,* the Supreme Court stated: "Ineffective assistance of counsel is established when it is proved that counsel for a criminal defendant failed to investigate adequately a purported alibi defense and consequently failed to contact, subpoena and call alibi witnesses who were willing and able to testify for the defendant in a case in which the alibi was the defendant's sole possible defense or a material defense." *See State v. Chamberlain,* 178 W.Va. 420, 359 S.E.2d 858 (1987). The Supreme Court declined to hold in *Glover* that the unexplained failure to give a notice of alibi, by itself, would demonstrate ineffective assistance. *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988). Instead, the determination of whether the failure to file a notice of alibi defense within the requirements of W.Va.R.Crim.P. 12.1 constitutes ineffective assistance of counsel depends on the facts and circumstances of each case. *State v. Glover,* 183 W.Va. 431, 433-34, 396 S.E.2d 198, 200-01 (1990).

26. Here, the Court finds that Petitioner's discovery response filed before trial indicated only two potential alibi witnesses: Amy Bosserman, Petitioner's girlfriend, and Mildred Cooper, Petitioner's grandmother. The Court further finds that during trial, Petitioner and Ms. Bosserman testified that they were alone together on the evenings of June 29 and June 30. (Tr. 64:4, 64:23, 66:11, 67:12, 67:22, 129:22, 132:6; Aug. 4, 2004.) The Court further finds that Petitioner and Ms. Bosserman did not testify that they were in the company of Petitioner's

mother during the times when the murder was committed. Therefore, the Court concludes that defense counsel's decision was not deficient under an objective standard of reasonableness.

27. Petitioner further asserts that defense counsel failed to advise Petitioner that the defense could move to bifurcate the trial into a guilt phase and a mercy phase and that defense counsel failed to make such a motion. With regard to bifurcation, the Supreme Court has stated:

> Related to the issue of failure to call character witnesses is the appellant's claim that counsel failed to discuss bifurcation of the trial with the appellant and failed to utilize it as a vehicle to introduce mitigating evidence on the appellant's behalf. Having found that counsel's decision not to introduce character evidence was not deficient, we likewise find that trial counsel's decision not to move to bifurcate the trial did not constitute ineffective assistance of counsel. Clearly, counsel's decision to not present character evidence obviated any need for a bifurcated trial.

*State ex rel. Kitchen v. Painter*, 226 W.Va. 278, 290, fn. 11, 700 S.E.2d 489, 501, fn. 11 (2010).

28. Here, the Court finds that the decision to not have a bifurcated trial was a trial tactic taken by Petitioner's experienced defense counsel. The Court further finds that a bifurcated trial would have allowed the State to introduce evidence of Petitioner's prior criminal history and prior bad acts as shown in the two 404(b) disclosures, most of which were excluded by pretrial rulings as not being admissible during the guilt phase of the trial. However, such evidence would have been admissible during the penalty phase of a bifurcated proceeding. *See State ex rel. Dunlap v. McBride*, 225 W.Va. 192, 691 S.E.2d 183 (2010). Furthermore, the Court finds that defense counsel did establish to the jury that Petitioner was twenty-one years of age, that he was a father, and that he was employed at the time of the crime. Therefore, the Court concludes that defense counsel's decision was not deficient under an objective standard of reasonableness.

29. Petitioner further asserts that defense counsel failed to prepare Petitioner to testify at trial and failed to share any of the discovery materials with Petitioner. Petitioner asserts that if

he had been able to review the police reports in discovery, he would not have conveyed to the jury the impression that he was deliberately lying to them. The Court believes that defense counsel did provide the discovery to Petitioner. Ms. Bosserman, Petitioner's girlfriend, testified that she and Petitioner's mother had seen and reviewed the discovery materials. (Tr. 90:4-19, Aug. 4, 2004.) Regardless, Petitioner still had to admit at trial, to the jury, about the multiple lies he told to several police officers during the investigation. Therefore, the Court concludes that defense counsel's decision was not deficient under an objective standard of reasonableness.

30. Petitioner further asserts that defense counsel failed to properly investigate. "The fulcrum for any ineffective assistance of counsel claim is the adequacy of counsel's investigation. Although there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and judicial scrutiny of counsel's performance must be highly deferential, counsel must at a minimum conduct a reasonable investigation enabling him or her to make informed decisions about how best to represent criminal clients. Thus, the presumption is simply inappropriate if counsel's strategic decisions are made after an inadequate investigation." Syllabus point 3, *State ex rel. Daniel v. Legursky*, 195 W.Va. 314, 465 S.E.2d 416 (1995).

31. Here, the Court finds that defense counsel requested and was provided with discovery. The Court further finds that Petitioner advances no specific allegations as to how defense counsel failed to adequately investigate his case. The Court further finds that Petitioner does not indicate what such an investigation would have established or disclosed. The Court further finds that the State and defense counsel presented witnesses who testified with regard to the wrench, the rope, and other items allegedly in the trunk of Petitioner's car. The Court further finds that Samantha Hayes testified that Stephen Cooper talked about killing the victim. (Tr.

56:11, Aug. 4, 2004.) Therefore, the Court concludes that defense counsel's decision was not deficient under an objective standard of reasonableness.

32. Although this Court is not required to address both prongs of the *Strickland/Miller* test if the Petitioner fails to meet his burden on one prong, the Court has considered both prongs. For the reasons stated above, the Court has concluded that defense counsel's decisions were not deficient under an objective standard of reasonableness. With regard to the second prong of the test, the Court finds that the State had enough evidence to prove Petitioner's guilt beyond a reasonable doubt and no reasonable probability existed for the jury to find in Petitioner's favor, but for errors of his defense counsel, assuming, *arguendo*, that errors existed. The Court finds that both Cooper brothers, who had obvious mental deficiencies, testified that Petitioner strangled the victim, that Petitioner drove them to an unfamiliar area to dump the body, and that they later helped Petitioner abandon his vehicle at a parking lot in the State of Maryland. The Court further finds that Petitioner testified in his own defense and even presented an alibi witness. However, the Court believes that the jury found the Coopers to be more credible than the Petitioner. In sum, the Court concludes that Petitioner did not have ineffective assistance of counsel and that he is not entitled to any relief on this ground.

### Insufficiency of Evidence

33. "Except in extraordinary circumstances, on a petition for habeas corpus, an appellate court is not entitled to review the sufficiency of the evidence." *Cannellas v. McKenzie*, 160 W.Va. 431, 436, 236 S.E.2d 327, 331 (W.Va. 1977) (citing *Riffle v. King*, 302 F.Supp. 992 (N.D.W.Va. 1969), and *Young v. Boles*, 343 F.2d 136 (4th Cir. 1965)).

34. The Supreme Court has provided guidance with regard to considering the sufficiency of the evidence on an appeal:

The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995).

35. Further,

A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

Syl. pt. 3, *id*. In addition,

[G]reat deference should be afforded to the decision of the jury, because the jury has heard all the evidence, and has had the opportunity to weigh the credibility of witnesses and the strength of the evidence. 'The jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.'

*State v. Thornton*, 228 W.Va. 449, 460, 720 S.E.2d 572, 583 (2011) (quoting syl. pt. 2, *State v. Bailey*, 151 W.Va. 796, 155 S.E.2d 850 (1967)).

36. Here, Petitioner asserts that to be found guilty of murder in the first degree, the State must prove beyond a reasonable doubt that the defendant intentionally and deliberately took the life of another. Petitioner argues that the only evidence of Petitioner's intent or deliberation regarding the victim's death, and the only evidence that Petitioner was even present at the crime scene, came from the inconsistent trial testimony of the Cooper brothers.

37.     Petitioner further argues that new evidence exists in the form of a letter from Scott Cooper, wherein Scott admitted that he committed the murder.

38.     The Court finds extraordinary circumstances do not exist for the Court to consider the sufficiency of the evidence. However, the Court does find that although there was little physical evidence connecting Petitioner to the crime, the jury obviously found the Cooper brothers to be credible witnesses, despite the inconsistencies in parts of their testimony. The Court further finds that Petitioner's defense counsel was not involved in the criminal case with regard to the letter that was allegedly from Scott Cooper and this is not a proper ground in this habeas proceeding. The Court notes that the purported letter was the basis for a motion for new trial and after several hearings, the motion was denied because the letter could not be authenticated.

### Failure to Preserve Material Evidence

39.     A trial court should consider three factors in determining the consequences of the State's failure to preserve evidence: (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of other evidence produced at the trial to sustain the conviction. *State v. Grimes*, 226 W.Va. 411, 418, 701 S.E.2d 449, 456 (2009) (citing *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995)).

40.     Here, Petitioner asserts that the State breached its duty to preserve evidence by cleaning the cinder blocks found in the lake. Petitioner argues (1) that the State was negligent in cleaning away evidence that could have shown how long the blocks were in the lake; (2) that the silt and other debris cleaned from the blocks were probative to show how long the blocks were in the lake and would likely have impeached Stephen and Scott Coopers' testimony; and (3) that

Petitioner would not have been convicted without the testimony of the Coopers because the remaining evidence was insufficient to sustain a conviction.

41. The Court finds that there is no evidence that the State was negligent in extracting the cinder blocks from the lake or that the State failed to preserve evidence by altering or cleaning the cinder blocks. The Court further finds that Petitioner has proffered no scientific basis that the silt or other debris could be analyzed to determine the length of time the cinder blocks were in the lake. Therefore, the Court concludes that the State did not fail to preserve material evidence.

### Admission of Prejudicial 404(b) Evidence

42. Here, Petitioner alleges that the trial court improperly admitted evidence of two "bad acts": (1) alleged abandonment of Petitioner's vehicle; and (2) alleged choking of Petitioner's girlfriend.

43. Rule 404(b) of the West Virginia Rules of Evidence states:

*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

44. In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), the first determination is whether the evidence is "intrinsic" or "extrinsic." *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996) (citing *United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990)).

'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to

the crime charged. (Citations omitted). If the proffer fits in to the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*-as part and parcel of the proof charged in the indictment. *See United States v. Masters,* 622 F.2d 83, 86 (4th Cir.1980) (stating evidence is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is ... appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "res gestae" ' "). (Citations omitted)....

*LaRock,* 196 W.Va. at 312 n. 29, 470 S.E.2d at 631 n. 29.

45.     "Events, declarations and circumstances which are near in time, causally connected with, and illustrative of transactions being investigated are generally considered *res gestae* and admissible at trial." *State v. Dennis,* 216 W.Va. 331, 607 S.E.2d 437 (2004) (quoting syl. Pt. 3, *State v. Ferguson,* 165 W.Va. 529, 270 S.E.2d 166 (1980), *overruled on other grounds by State v. Kopa* 173 W.Va. 43, 311 S.E.2d 412 (1983)). However, "[o]ther criminal act evidence admissible as part of the res gestae or same transaction introduced for the purpose of explaining the crime charged must be confined to that which is reasonably necessary to accomplish such purpose." *Dennis,* 216 W.Va. at 351, 607 S.E.2d at 457 (quoting syl. Pt. 1, *State v. Spicer,* 162 W.Va. 127, 245 S.E.2d 922 (1978)).

46.     In *State v. Hutchinson,* the Supreme Court held that Rule 404(b) did not apply where the "other bad acts" of the defendant, which included threatening to kill various people shortly before the fatal shooting of the victim, constituted intrinsic evidence and were admitted to complete the story of the victim's death. *State v. Grimes,* 226 W.Va. 411, 701 S.E.2d 449 (2009) (citing *Hutchinson,* 215 W.Va. 313, 599 S.E.2d 736 (2004)).

47.     The Court finds that the abandonment of Petitioner's vehicle was not a 404(b) issue and that the trial court considered this issue during the trial. (Tr. 111:14-117:21, Aug. 2, 2004.) The Court finds that the abandoned vehicle was part of the res gestae of the crime and was admissible evidence. The Court further finds that the State's cross-examination of Ms.

Bosserman was proper impeachment of a witness and was not governed by 404(b). The Court believes that the probative value outweighed any prejudicial effect because it was used to impeach the credibility of Petitioner's sole alibi witness. Therefore, the Court concludes that the trial court did not admit prejudicial 404(b) evidence.

## Failure to Call Mistrial Due to Improper Voir Dire

48. Here, Petitioner alleges that during voir dire, a prospective juror, Ms. Healy, announced to the rest of the jury pool that, "I know the Defendant from a previous placement that he was in." (Tr. 9:15-16, Aug. 2, 2004.) At this point, counsel approached the bench and defense counsel moved to poll a new jury, which was denied, but the trial court did grant defense counsel's motion to strike that juror for cause. (Tr. 9:17-12:10, Aug. 2, 2004.)

49. The right to an impartial and objective jury is a fundamental right. The Supreme Court held in Syllabus Point 4 of *State v. Peacher* that, "The right to a trial by an impartial, objective jury in a criminal case is a fundamental right guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution and Article III, Section 14, of the West Virginia Constitution. A meaningful and effective voir dire of the jury panel is necessary to effectuate that fundamental right." 167 W.Va. 540, 280 S.E.2d 559 (1981).

50. In *State ex rel. Kitchen v. Painter*, the Supreme Court stated, "[B]ecause the prospective jurors at issue did not sit on the appellant's jury, the appellant is unable to show that the jury in his trial was not impartial and objective. The most that the appellant can show is a violation of his right to a jury panel of twenty jurors free from exception under W. Va.Code § 62-3-3 (1949)." 226 W.Va. 278, 295-96, 700 S.E.2d 489, 506-07 (2010).

51. However, as the Supreme Court explained in *State v. Phillips*, a violation of W. Va.Code § 62-3-3 is not constitutional error.

The mere presence of a biased prospective juror on a jury panel, although undesirable, does not threaten a defendant's constitutional right to an impartial jury if the biased panel member does not actually serve on the jury that convicts the defendant. Although a defendant may be forced to use a peremptory challenge to remove a juror that should have been removed for cause does not alone invalidate the fact the juror was thereby removed from the jury as effectively as if the trial court had excused him for cause. Peremptory challenges are merely a means of achieving an impartial jury. They are neither mandated by the United States or the West Virginia Constitution nor of constitutional dimension and we will not permit the loss of a peremptory challenge to establish the breach of a constitutional guarantee in this context.

194 W.Va. 569, 587, 461 S.E.2d 75, 93 (1995) (citations, internal brackets, and quotations marks omitted).

52. The purpose of voir dire is to obtain a panel of jurors free from bias or prejudice. *State v. Harshbarger*, 170 W.Va. 401, 294 S.E.2d 254, 256 (1982). "The relevant test for determining whether a juror is biased is whether the juror had such a fixed opinion that he or she could not judge impartially the guilt of the defendant." Syllabus Point 4, in part, *State v. Miller*, 197 W.Va. 588, 476 S.E.2d 535 (1996). "Actual bias can be shown either by a juror's own admission of bias or by proof of specific facts which show the juror has such prejudice or connection with the parties at trial that bias is presumed." *Id.*

53. " ' "A trial court's failure to remove a biased juror from a jury panel does not violate a defendant's right to a trial by an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Section 14 of Article III of the West Virginia Constitution. In order to succeed in a claim that his or her constitutional right to an impartial jury was violated, a defendant must affirmatively show prejudice." Syl. Pt. 7, *State v. Phillips*, 194 W.Va. 569, 461 S.E.2d 75 (1995).' Syllabus Point 6, *State ex rel. Quinones v. Rubenstein*, 218 W.Va. 388, 624 S.E.2d 825 (2005)." Syllabus Point 6, *State ex rel. Farmer v. McBride*, 224 W.Va. 469, 686 S.E.2d 609 (2009).

54.    The Court finds that there was no special attention brought to Ms. Healy's statement. The Court further finds that Ms. Healy did not elaborate on what she meant by saying "placement" and there is no indication that the jury panel thought she meant incarceration or other confinement. The Court further finds that the trial court made further inquiries of the jury panel, after that particular comment, if there was any reason that they had a bias or prejudice against Petitioner and none of the jurors stated that they were influenced by Ms. Healy's statement. The Court further finds that Ms. Healy did not serve on the jury that convicted the Petitioner. Therefore, the Court concludes that Petitioner is unable to show a violation under the State and federal constitutions regarding his right to an impartial, objective jury. Therefore, the Court concludes that the trial court did not err in failing to call a mistrial during voir dire.

## Prosecutorial Misconduct

55.    Here, Petitioner alleges that the Prosecuting Attorney purposely framed questions to elicit hearsay responses on three separate occasions and laughed about the defense objections to the hearsay. (Tr. 132:12-13, 23-24; 138:10-142:15, Aug. 2, 2004.) Petitioner argues that this conduct misled the jury because the constant objections and laughter gave the jury the false impression that the defense had something to hide. Petitioner further argues that the Prosecutor said defense counsel jumped up like a jack-in-the-box. (Tr. 142:12-13, Aug. 2, 2004.)

56.    The Supreme Court has stated:

The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

*State v. Kendall,* 219 W.Va. 686, 690-91, 639 S.E.2d 778, 782-83 (2006) (quoting *State v. Boyd,*

160 W.Va. 234, 233 S.E.2d 710 (1977)).

57.     Syllabus point six of *State v. Sugg,* also provides as follows:

Four factors are taken into account in determining whether improper prosecutorial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

193 W.Va. 388, 456 S.E.2d 469 (1995).

58.     The Court finds that the Petitioner presented no evidence showing that the

Prosecutor's actions prejudiced him. The Court has considered the four factors from *Sugg* and

finds it unlikely that the Prosecutor's remark about defense counsel jumping up like a jack-in-

the-box misled the jury because it was an isolated comment made out of the presence of the jury.

Although it may have been a bit improper for the Prosecutor to laugh in the presence of the jury,

the Court finds it was likewise an isolated action. The Court further finds that the Prosecutor did

not intentionally elicit hearsay testimony from the witnesses. Rather, the witnesses were lay

people who answered in what would be hearsay testimony from the victim. Therefore, the Court

concludes that there was no prosecutorial misconduct.

## Failure to Investigate

59.     Here, Petitioner alleges that defense counsel failed to contact witnesses, failed to

contact potential witnesses, and failed to retain essential experts.

60.     For the reasons stated in paragraphs 22, 23, 25, 26, 30, and 31, *supra,* the Court

concludes that Petitioner is not entitled to any relief with regard to this ground.

61.    The Petitioner did not make any allegations of any Federal grounds in his Amended Petition or Memorandum and therefore, the Court makes no findings thereon.

62.    The Court concludes that an evidentiary hearing is not required for the Court to make these findings and conclusions inasmuch as all of the grounds alleged can readily be determined by reference to the record in State v. Ryan Michael Nenigar, Hampshire County Criminal Action Number 04-F-30. See e.g. Perdue v. Coiner, 156 W.Va. 467, 194 S.E.2d 657 (1973); State ex rel. Waldron v. Scott, 222 W.Va. 122, 663 S.E.2d 576 (2008) (per curiam).

WHEREFORE the Court does hereby ADJUDGE and ORDER that the Amended Petition for Writ of Habeas Corpus is DENIED.

It is further ORDERED:

❖ The Circuit Clerk shall send true copies of this Order to the Prosecuting Attorney of Hampshire County, Counsel for the Petitioner, and to the Petitioner.

❖ The objection of the parties to any and all adverse rulings is noted.

❖ Nothing further is remaining to be done in this matter, and the Circuit Clerk shall remove this action from the docket and place it among the matters ended.

ENTERED this _6th_ day of _February_, 2013.

_____
~~DONALD H. COOKMAN~~, JUDGE
Thomas H. Keadle
Senior Status Judge

Page 21 of 21